UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

RONNIE PARKER,

Defendant.

**DECISION AND ORDER**

14-CR-06045 EAW

## INTRODUCTION

Defendant Ronnie Parker ("Defendant") is charged in a one-count indictment with violating 18 U.S.C. § 871 by allegedly threatening the life of the President of the United States. (Dkt. 11). After remaining in custody for close to 8 months, Defendant was released to reside at a residential facility for mentally ill individuals, with various conditions in place. Within a matter of days, Defendant violated those conditions. The Government sought to revoke Defendant's pretrial release, and the United States Magistrate Judge granted that application, remanding Defendant into custody.

Defendant now seeks review of that detention order pursuant to 18 U.S.C. § 3145(b). (Dkt. 32). Because the standard for revocation of Defendant's release was met pursuant to 18 U.S.C. § 3148(b), detention is appropriate in this case and Defendant shall remain in custody pending the trial in this action.

## FACTUAL BACKGROUND

Defendant was arraigned on February 28, 2014, on a criminal complaint charging him with violating 18 U.S.C. § 871 for allegedly threating the life of the President of the

- 1 -

United States. (Dkt. 1). The basis for the complaint was Defendant's alleged statements
to a Special Agent with the United States Secret Service, Joel D. Blackerby, and others
that "he was going to shoot and kill the President. . . ." (*Id.* at 3). Agent Blackerby
apparently learned of the alleged threats when, on February 6, 2014, he was contacted by
staff at the Clifton Springs Hospital in Clifton Springs, New York, who advised that
Defendant, who suffers from schizophrenia, had been admitted that day because "he had
been hearing voices, some of which told him to kill the president." (*Id.* at ¶ 4).
Defendant allegedly voluntarily "requested hospitalization because he was afraid and
didn't want to act out what the voice was telling him to do." (*Id.*).

The next day, Agent Blackerby interviewed Defendant at the hospital. (*Id.* at ¶ 5).
Among other things, Defendant allegedly told Agent Blackerby that he had begun to
think about killing the President a few days earlier "after the voices started telling him to
'find him and kill him.'" (*Id.* at ¶ 7). According to Agent Blackerby:

> [Defendant] spoke clearly about his plan. He stated he would need to find
> the President's schedule on the internet, find a gun then travel to where he
> was. He stated he "would have to wait till [the President] got out of the
> motorcade or came to shake hands." He further stated that he ". . . would
> have to kill all the people around [the President] to get to him." He advised
> that he would find a gun and shoot the President if he came by today.

(*Id.*). Defendant allegedly told Agent Blackerby that the voice who spoke to him about
killing the President was named "DALLAS." (Dkt. 1 at ¶ 9).

On March 27, 2014, a detention hearing was held before the Honorable Marian W.
Payson, United States Magistrate Judge for the Western District of New York, as was the
Government's motion for a psychiatric examination and hearing to determine

Defendant's competency pursuant to 18 U.S.C. § 4241. (Dkt. 10). On April 10, 2014, a grand jury returned a single count indictment charging the Defendant with violating 18 U.S.C. § 871 as a result of the various alleged statements made to Agent Blackerby while he was interviewed at the Clifton Springs Hospital. (Dkt. 11). That same day, Defendant was arraigned on the indictment, and Judge Payson granted the Government's motion for a competency evaluation. (Dkt. 15).

Defendant was evaluated at the Federal Medical Center, Devens, Massachusetts, resulting in a Forensic Report dated July 29, 2014. (Dkt. 17). Based upon that report, and by Report and Recommendation dated August 14, 2014, Judge Payson recommended that Defendant be determined competent to stand trial. (Dkt. 18). This Court issued an Order on September 8, 2014, adopting the Report and Recommendation. (Dkt. 23).

A bail review hearing was held on August 29, 2014, and Judge Payson set conditions of release, requiring Defendant to remain at a supervised residential facility for mentally ill individuals, Lakeview Mental Health ("Lakeview") located at 193 Parrish Street in Canandaigua, New York. (Dkt. 21, 22). The audio transcript from the hearing on August 29, 2014, reflects that Judge Payson reviewed each condition of release with Defendant, and Defendant indicated his agreement to comply with the conditions as well as his understanding that a violation of the conditions would result in his detention. Similar assurances were given by Defendant a week earlier in response to Judge Payson's questions at a status conference held on August 21, 2014, where the anticipated release was discussed. (Dkt. 20).

The Order entered by Judge Payson setting the conditions of release required, among other things, that Defendant comply with the following:

1. Not commit any offense in violation of federal, state or local law;

2. Remain at Lakeview and comply with the facility's rules and regulations;

3. Refrain from use or unlawful possession of narcotics or other controlled substances unless prescribed by a licensed medical practitioner; and,

4. Comply with medication and treatment requirements.

(Dkt. 22).

Once a bed became available at Lakeview, Defendant was released on October 14, 2014, and transported to the facility by his attorney. (Dkt. 32 at 5). Within 10 days, the Defendant had violated the conditions of his release. The record shows that at approximately 6:00 a.m. on October 24, 2014, residents and staff of Lakeview were awakened to the activation of a fire alarm in Defendant's bedroom. Defendant was not present in his room, but a crack pipe and three bags appearing to contain crack cocaine were located in Defendant's room. Defendant missed the 9:00 p.m. curfew that evening, and did not return to Lakeview until the following evening (October 25, 2014) at approximately 5:00 p.m., when he was located by police officers in Geneva, New York, responding to a missing person's report. (*See* Dkt. 25-1 at 2). During this almost 36-hour time period, Defendant missed administration of his required medication at least three times. Lakeview did not notify law enforcement about Defendant's absence until over 24 hours after he went missing.

Defendant tested positive for cocaine on October 27, October 31, and again on November 5, 2014.   Defendant admitted that he fled to Geneva, New York, with a prostitute, and during this excursion, he used approximately $100 worth of crack cocaine. (Dkt. 25-1 at 3).   The evidence in the record from the hearing held before Judge Payson on November 5, 2014, also suggests that Defendant would not have tested positive for cocaine on that date unless he had subsequently used cocaine after returning to Lakeview on October 25, 2014.

On November 4, 2014, the Government filed a motion to revoke Defendant's release order (Dkt. 25), and a hearing was held on November 5, 2014, and continued on November 7, 2014, before Judge Payson (Dkt. 27,  29).  By Order entered November 7, 2014, Judge Payson granted the Government's motion to revoke.  (Dkt. 30).  Defendant sought review of that Order before this Court (Dkt. 32), the Government opposed Defendant's motion (Dkt. 34), and a hearing was held before this Court on December 3, 2014 (Dkt. 35).

## DISCUSSION

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq.*, authorizes and sets forth the procedures for the release or detention of a person pending trial, sentence, and appeal. In reviewing a detention order of a Magistrate Judge pursuant to 18 U.S.C. § 3145(b), a District Judge should not simply defer to the judgment of the Magistrate Judge, but rather must reach his or her own independent conclusions.  *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).  "When making its *de novo* review, the district court may rely on the

record of the proceedings before the magistrate judge and may also accept additional evidence." *United States v. Marra*, 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001).

As relevant here, 18 U.S.C. § 3148(b) sets forth the basis for revoking an order of release where a defendant violates the conditions of his release or commits a crime while on release. A hearing and two-step inquiry is required to determine whether the order of release should be revoked.

A.    First Step of § 3148(b) Inquiry

The first step requires the Court to determine if either (1) there is "probable cause to believe that the person has committed a Federal, State, or local crime while on release," or (2) there is "clear and convincing evidence that the person has violated any other condition of release. . . ." 18 U.S.C. § 3148(b)(1)(A)-(B). Here, Defendant does not contest that this first step has been satisfied. (Dkt. 32 at 7 ("While Parker concedes that the government presented clear and convincing evidence that he may have violated his release conditions. . . .")). Indeed, the facts are essentially undisputed on this issue: Defendant did not comply with his medication requirements; he left Lakeview and failed to return by the 9:00 p.m. curfew; he used cocaine while associating with a prostitute in Geneva, New York; and for almost 36 hours, Defendant went missing until discovered by the Geneva Police who returned him to Lakeview.

Based on this evidence in the record, the Court finds that there is probable cause to believe that Defendant committed a Federal, State, or local crime while on release. *See United States v. Gotti*, 794 F.2d 773, 777 (2d Cir. 1986) (finding of probable cause "requires only that the facts available to the judicial officer warrant a man of reasonable

caution in the belief that the defendant has committed a crime while on bail.") (citation and quotation omitted).    Furthermore, there is clear and convincing evidence that Defendant violated various other conditions of release, including through his use of cocaine, his failure to remain at Lakeview and comply with its rules and regulations, and his failure to take his medication.

B.    Second Step of § 3148(b) Inquiry

The second step of the analysis requires the Court to find either (1) that "there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community," or (2) that "the person is unlikely to abide by any condition or combination of conditions of release."   18 U.S.C. § 3148(b)(2)(A)-(B).   The Second Circuit Court of Appeals has indicated that a finding that the defendant is a flight risk or danger will presumably support a finding that the person is unlikely to abide by conditions of release, and vice versa.   *Gotti*, 794 F.2d at 776 n.3 ("It is not clear whether there is a significant difference between the findings required by paragraphs (A) and (B) of subsection (2).   For example, if the person on bail is, in the words of paragraph (2)(B) 'unlikely to abide by any condition' designed to keep him from fleeing, then presumably under paragraph (2)(A) 'there is no condition . . . that will assure that the person will not flee.   Conversely, if no condition will prevent flight, it would seem that the person, in the words of paragraph 2(B), is also 'unlikely to abide by any condition' meant to deter such flight.").   In other words, despite the two separate factors that should be considered as part of the second

step of the § 3148(b) analysis, the inquiry overlaps and arguably requires consideration of the same elements.

The statute specifies that the factors set forth in 18 U.S.C. § 3142(g) must be considered when determining whether there is a condition or combination of conditions that will assure that the person will not flee or pose a danger.  Those factors are as follows:

(1)     the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . .;

(2)     the weight of the evidence against the person;

(3)     the history and characteristics of the person, including –

(A)   the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B)   whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4)     the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Although during an initial bail hearing the Government bears the burden of persuasion to demonstrate dangerousness by clear and convincing evidence and risk of flight by a preponderance of the evidence, *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985), when considering a motion to revoke a release order, the

Government's burden is preponderance of the evidence for both risk of flight and danger. *United States v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000). *See Gotti*, 794 F.2d at 777-78 (the initial bail hearing burden of "clear and convincing evidence" with respect to a defendant's dangerousness is inapplicable to revocation proceeding). In addition, a finding of probable cause that the person committed a felony while on release gives rise to a rebuttable presumption that no release conditions can ensure the safety of others. 18 U.S.C. § 3148(b)(2). As one court has explained: "Once the presumption arises, the ball is in the defendant's court, and it is incumbent on the defendant to come forward with some evidence to rebut the presumption." *United States v. Cook*, 880 F.2d 1158, 1162 (10th Cir. 1989) (citations omitted). "That presumption does not disappear once the defendant has produced some rebuttal evidence, but 'continues to be weighed along with other factors.'" *LaFontaine*, 210 F.3d at 130 (quoting *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991)).

Here, the record demonstrates that there is probable cause to believe that Defendant committed a felony while at Lakeview and when he absconded from the facility. As a result, there is a rebuttable presumption that no release conditions can ensure the safety of others. Defendant failed to rebut that presumption, and therefore, the Government has sustained its burden under the second step of the analysis based upon this presumption alone. *See Rodriguez*, 950 F.2d at 88 (Government may sustain its burden by reliance on the presumptions of flight and dangerousness).

However, even if there was no rebuttable presumption, the Court would reach the same conclusion, because the Government has plainly demonstrated by a preponderance

of the evidence[1] that Defendant presents both a flight risk and a risk of danger, no condition or combination of conditions will assure that Defendant will not flee or pose a risk of danger, and Defendant is unlikely to abide by any condition or combination of conditions of release.  Each of the factors under § 3142(g) is discussed below.

1.   *Nature and Circumstances of Offense*

The nature and circumstances of the offense charged support detention, since the crime with which Defendant is charged is a crime of violence as defined under the Bail Reform Act.  *See* 18 U.S.C. § 3156(a)(4) (defining crime of violence to include an offense that has as an element of the offense "the use, attempted use, or threatened use of physical force" against a person).  *Cf. United States v. Batten*, 936 F.2d 580 (9th Cir. 1991) (threat to kill president in violation of 18 U.S.C. § 871 was a crime of violence within the meaning of the Sentencing Guidelines, so as to justify career offender status).

2.   *Weight of Evidence*

Defendant focused extensively in his arguments to the Court on the second factor under § 3142(g), arguing that the weight of the evidence against him was weak, thus justifying his pretrial release.  It is true that this case raises some interesting issues, particularly in the aftermath of the United States Supreme Court's decision in *Jaffee v. Redmond*, 518 U.S. 1 (1996), as to whether Defendant can be held responsible for the

---

[1]   In its motion papers, the Government actually relies on the more stringent standard of "clear and convincing" evidence with respect to Defendant's risk of danger. (Dkt. 34 at 4).  This is not the standard of proof required on a motion under § 3148(b).  However, even if it was the standard, the Court would reach the same conclusion, as the proof demonstrates by clear and convincing evidence that Defendant presents a danger to the community and others and no condition or set of conditions can protect against that danger.

alleged threats that he made against the President under the circumstances present here (i.e. where he voluntarily seeks medical treatment and the ultimate utterance of the threats is allegedly made while under medical care and precipitated by a communication arguably protected by Fed. R. Evid. 501 pursuant to *Jaffee*). *See, e.g., United States v. Glass*, 133 F.3d 1356, 1360 (10th Cir. 1998) (vacating guilty plea and remanding for further proceedings to determine whether defendant's threat to kill the President made during the course of treatment with psychotherapist "was serious when it was uttered and whether its disclosure was the only means of averting harm to the President when the disclosure was made."); *cf. United States v. Johnson*, 14 F.3d 766, 768 (2d Cir. 1994) (in pre-*Jaffee* case, conviction for violating 18 U.S.C. § 871 upheld where defendant made statements to a recreational therapist during the course of psychiatric treatment; statements were reported to the Secret Service, who interviewed the defendant; and based upon statements during that interview, defendant was successfully prosecuted).

However, while Defendant may be able to launch a successful defense to the charges, this does not necessarily mean that the Government's case against Defendant is weak.  18 U.S.C. § 871 requires only a showing of "general intent" that the defendant intentionally made a statement "'in a context or under such circumstances where a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily harm upon or to take the life of the President, and that the statement not be the result of mistake, duress, or coercion.'" *Johnson*, 14 F.3d at 768 (quoting *Roy v. United States*, 416 F.2d 874, 877-78 (9th Cir. 1969)).

While consideration of the weight of the evidence against Defendant may not support detention as strongly as the other § 3142(g) factors, this factor is considered the least important.  *See United States v. Jones*, 566 F. Supp. 2d 288, 292 (S.D.N.Y. 2008) (the "weight factor" is generally considered the least important consideration because "the Court's function in examining the weight of the evidence is not to determine guilt or innocence.");  *United States v. Fama*, No. 13 Cr. 234(JFK), 2013 WL 2467985, at *3 (S.D.N.Y. June 7, 2013) ("some courts have described the weight of the evidence factor as the 'least important' of the § 3142(g) factors" because it is inherently difficult to assess the Government's case before trial and a defendant must be presumed innocent) (citations omitted).   As a result, consideration of the weight of the evidence does not require Defendant's release.

3.    *Defendant's History and Characteristics*

Defendant's history and characteristics strongly support detention.

The Government has cited to evidence supported by the Forensic Report as well as testimony elicited from Defendant's treating psychiatrist, Douglas A. Landy, M.D., that Defendant has a history of noncompliance with his medications, particularly when he uses illegal drugs, which makes his psychosis worse and leads fairly quickly to his decompensation.   During the hearing before this Court, Defendant objected to this information and testimony to the extent they were used to address bail issues, as compared to Defendant's competency.

The Bail Reform Act does not authorize a judicial officer to order as a condition of pretrial release a psychiatric examination to determine a defendant's dangerousness.

*United States v. Martin-Trigona*, 767 F.2d 35, 38 (2d Cir. 1985) ("Judicial officers cannot order psychiatric examinations for the purpose of aiding the government in establishing its burden of proof at a detention hearing or to determine appropriate conditions of pretrial release."). Whether that case law stands for the proposition that, under the circumstances present here, a court is precluded from considering evidence contained in the competency report or testimony elicited as part of a hearing concerning both competency and bail, is not clear. However, the Court need not resolve that issue, because even without considering Dr. Landy's testimony[2] and the Forensic Report, Defendant's history and characteristics support detention.

Most persuasive are the circumstances surrounding Defendant's violation of the conditions of his release. Defendant was held in custody for almost 8 months, and after successful efforts by the Probation Department and his counsel to locate an acceptable placement for him where he would be supervised at least to some degree, Judge Payson issued an order releasing Defendant with various conditions. Judge Payson repeatedly explained to Defendant prior to his release that his compliance with these conditions was essential to his ability to remain released. Yet, within days of his release, Defendant used narcotic drugs, stopped taking his prescribed medicine, and bolted from Lakeview. Moreover, the record reflects that Defendant continued to use narcotics even after being

---

[2]     Although not specifically raised by Defendant, Dr. Landy's testimony also implicates privilege considerations in view of *Jaffee*. At least the Ninth, Eighth and Sixth Circuits have held that there is no dangerous-patient exception to the psychotherapist-patient testimonial privilege recognized by *Jaffee*. *See United States v. Ghane*, 673 F.3d 771, 785-86 (8th Cir. 2012); *United States v. Chase*, 340 F.3d 978, 985-92 (9th Cir. 2003); *United States v. Hayes*, 227 F.3d 578, 585-86 (6th Cir. 2000). *But see Glass*, 133 F.3d at 1360 (10th Cir. 1998) (recognizing dangerous-patient exception).

returned to Lakeview.    Under the circumstances, the evidence overwhelmingly demonstrates that Defendant is both a flight risk and a risk of danger, and he is unlikely to abide by any condition or combination of conditions of release.    Indeed, it is Defendant's own conduct during the brief period of his release that demonstrates his risk of flight and danger, and shows that no conditions can adequately protect against those risks.

Defendant suggests that if the Court specifically imposed a curfew, this would somehow prevent him from again violating his pretrial release conditions.  But there is simply no support in the record for this contention.  Defendant already was required to comply with a 9:00 p.m. curfew set by Lakeview, and yet he violated that requirement along with the other requirements specifically set by the Court.

Defendant also suggests that electronic monitoring through a GPS unit would similarly compel his compliance.   While this may provide more timely notice of Defendant's departure from Lakeview, it will not ensure Defendant's compliance with the other conditions of his release, including the requirement that he refrain from the use of narcotics and take his prescribed medication.

Put simply, Defendant was provided with an opportunity to demonstrate his ability to follow the conditions of his pretrial release and his conduct shows he is unable to do so.

    4.    *Nature of Danger*

For all the reasons previously discussed, the nature and seriousness of the danger presented by Defendant's release weighs in favor of detention.   Here, the evidence

suggests that Defendant placed the other residents at Lakeview in danger when he used narcotics causing a fire alarm to be activated.  Moreover, Defendant placed himself and the community in danger when he absconded from the facility where all parties recognized Defendant needed to remain, without taking his prescribed medication. Additionally, given the nature of the underlying charges, where Defendant has allegedly admitted that he believes, when not taking his necessary medication, that voices are telling him that he needs to kill the President, the danger is self-evident.

## CONCLUSION

For the foregoing reasons, Defendant shall remain detained pending the trial in this matter.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:          December 15, 2014
                Rochester, New York